UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA SANFORD,

    Plaintiff,

v.

STANDARD FEDERAL BANK, now
known as BANK OF AMERICA,

    Defendant/Counter-Plaintiff/Third-
    Party Plaintiff,

v.

BERNARD SANFORD,

    Third-Party Defendant.
    _____/

Case No. 10-12052

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 23, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

On May 21, 2010, Cynthia Sanford ("Plaintiff") filed this *pro se* action, alleging that Standard Federal Bank, now known as Bank of America ("BOA"), wrongfully withheld funds in her Supplemental Security Income ("SSI") direct deposit account. Plaintiff alleges that BOA's actions violated the Social Security Act, 42 U.S.C. § 401 *et seq.*, a mortgage agreement, and the Fifth and Fourteenth Amendments to the United States

Constitution. Before the Court is BOA's Motion to Dismiss, for Summary Judgment, and for a Litigation Injunction Against the Sanfords, filed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 56, and 28 U.S.C. § 1651. Also before the Court is Plaintiff's Motion for Judgment on the Pleadings, filed pursuant to Federal Rule of Civil Procedure 12(c). On February 4, 2011, the Court notified the parties that it was dispensing with oral argument. For the reasons stated below, the Court grants BOA's Motion to Dismiss and for a Litigation Injunction against the Sanfords, and denies Plaintiff's Motion for Judgment on the Pleadings.

## I. Factual and Procedural Background

On September 11, 1997, Plaintiff and her husband, Bernard Sanford, purchased a home located at 9163 Winthrop, in Detroit, Michigan ("the property"). They financed the purchase with a $26,009 loan from Gehrke Mortgage Corporation and granted the lender a mortgage interest in the property.

The Sanfords later defaulted on this obligation, and BOA, which had obtained the mortgage by assignment, attempted to foreclose on five separate occasions. Each time, the Sanfords filed for bankruptcy protection in the Bankruptcy Court for the Eastern District of Michigan days before the foreclosure sale was scheduled to occur. The Bankruptcy Court dismissed each of these cases.[1]

In August 2001, Mr. Sanford filed a civil action against BOA in Wayne County

---

[1] Plaintiff also filed a sixth bankruptcy case in the Eastern District of Michigan during February 2005, which was subsequently dismissed for violation of the Bankruptcy Court's 180-day bar to refiling.

2

Circuit Court, asserting claims of fraud, bad faith, negligence, violation of the Michigan Consumer Protection Act, and intentional interference with a work-out plan relationship. Mr. Sanford alleged that BOA prevented him from withdrawing funds from his bank account, leading him to default on the mortgage loan. The court granted BOA's motion for summary disposition, dismissing the action with prejudice. The property was later sold to BOA at a sheriff's sale on February 11, 2004, and a sheriff's deed was executed.

After the foreclosure sale and the expiration of the redemption period, BOA filed eviction proceedings against the Sanfords in 36th District Court. This litigation resulted in a consent judgment of possession in favor of BOA, and the court entered an order of eviction on July 7, 2005.

The Sanfords filed a lawsuit in the Eastern District of Michigan on December 27, 2004, seeking to quiet title to the property and recover damages on grounds of estoppel and due process violations. The Sanfords alleged that the sheriff's deed to the property was void. District Judge Victoria Roberts dismissed the suit pursuant to 28 U.S.C. § 1915(e)(2)(B) on grounds that it was frivolous and failed to state a claim for relief.

Mr. Sanford filed a lawsuit against BOA in Wayne County Circuit Court on May 25, 2005, seeking to vacate the sheriff's deed and quiet title to the property. He alleged that the sheriff's deed was void because the default on the mortgage was caused by BOA's "delaying his ability to make a timely monthly payment" in August 2000. Def.'s Br. Supp. Mot. Ex. 9 ¶ 9-10. The court dismissed the action with prejudice on January 25, 2006, in response to BOA's motion for summary disposition. The Michigan Court of Appeals subsequently dismissed Mr. Sanford's appeal for failure to pursue the case in conformity

with the court's rules.

Mr. Sanford responded by filing a lawsuit in the Eastern District of Michigan on February 10, 2009, alleging that BOA refused to let him withdraw funds from his checking account in violation of 42 U.S.C. § 1983. Mr. Sanford again sought an order vacating the sheriff's deed to the property. District Judge Julian Abele Cook dismissed the suit for lack of subject matter jurisdiction, holding that it was an impermissible appeal of a state court judgment to a federal district court.

The Sanfords filed an action in Wayne County Circuit Court on August 26, 2009, alleging that the order granting summary disposition in their 2001 Wayne County Circuit Court action was void. They again claimed that the sheriff's deed to the property was void and sought to quiet title to the property. The court dismissed the suit in an order granting summary disposition on May 21, 2010.

Plaintiff filed this lawsuit on May 21, 2010, the same day her previous suit was dismissed. In this suit, Plaintiff alleges that BOA attempted to collect on a mortgage loan by freezing funds in her SSI direct deposit account, in violation of 42 U.S.C. § 407(a). Compl. ¶ 2.

Plaintiff also filed another lawsuit in Wayne County Circuit Court the same day, raising nearly identical allegations. Plaintiff again sought an order vacating the sheriff's deed and quieting title to the property. BOA removed the case to this Court on June 11, 2010. The case was assigned case number 10-cv-12333, and assigned to this Court as a companion case. This Court granted BOA's motion to consolidate the two cases on November 19, 2010, ordering that the cases would proceed as case number 10-cv-12052.

On December 9, 2010, BOA filed its Motion to Dismiss, for Summary Judgment, and for a Litigation Injunction Against the Sanfords pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 56, and 28 U.S.C. § 1651. BOA argues that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, and that the doctrines of res judicata and collateral estoppel bar Plaintiff's claims. BOA asserts that Plaintiff's claim under 42 U.S.C. § 407(a) fails because no judicial or quasi-judicial mechanism was involved in the alleged seizure of Plaintiff's funds. As for Plaintiff's Fifth and Fourteenth Amendment claims, BOA contends that they fail as a matter of law because Plaintiff cannot establish that BOA acted under the color of state law. Finally, BOA requests that this Court issue a litigation injunction against the Sanfords to prevent them from filing new lawsuits relating to the same transaction.

Plaintiff has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff argues that she should prevail in her claims as a matter of law because BOA has not stated any valid defenses, and because Congress intended the Social Security Act to prohibit the seizure of SSI funds by creditors.

## II. BOA's Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks to dismiss a complaint for lack of proper subject matter jurisdiction. Proper jurisdiction is a requirement in determining the validity of a claim, and as such, Rule 12(b)(1) motions must be considered by a court prior to any other challenges. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1946). Motions to dismiss for lack of proper subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United*

*States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the pleading itself. *Id.* During a facial attack, the court must treat all material allegations in the complaint as true and construe the allegations in the light most favorable to the non-moving party. *Id.* A factual attack, on the other hand, challenges the factual existence of subject matter jurisdiction. *Id.* "On such a motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* BOA has presented a factual attack on the Court's subject matter jurisdiction. It is the plaintiff's burden to demonstrate that the court has subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

    BOA's challenge under the *Rooker-Feldman* doctrine must be addressed first, as it implicates the Court's subject matter jurisdiction. The *Rooker-Feldman* doctrine[2] holds that district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). *Rooker-Feldman* applies only where a state court judgment is the source of the injury upon which plaintiff bases his federal claim. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If there is some other source of injury,

---

[2] The *Rooker-Feldman* doctrine takes it name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

such as a third party's actions, then the plaintiff asserts an independent claim."[3]  *Id.* at 393.

"If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Exxon Mobil*, 544 U.S. at 293, 125 S. Ct. at 1527 (alterations in original) (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

The *Rooker-Feldman* doctrine does not apply to this case, as Plaintiff does not complain of injuries resulting from a state court judgment.  Rather, she alleges that her injuries resulted from BOA's wrongful withholding of checking account funds.  Plaintiff claims that the sheriff's deed to the property is void, but there is no indication that deed was obtained through a state court judgment.  Although state courts have previously adjudicated Plaintiff's claims, a federal district court does not lose subject matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court."  *Id.*  Accordingly, the Court denies BOA's motion to dismiss for lack of subject matter jurisdiction.

### III. BOA's Motion to Dismiss for Failure to State a Claim for Relief

**A. Standard of Review**

---

[3] *McCormick* provides an example to clarify this inquiry.  Where a parent challenges a state court's termination of child custody rights, the state court judgment is the source of the injury.  *McCormick*, 451 F.3d at 394.  But where a plaintiff seeks to challenge a state court's ruling that his employer did not discriminate against him, the injury is not the judgment, but rather, the employer's discrimination.  "The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment."  *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co.*, 78 F.3d at 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

8

and common sense." *Id.* at 1950.

In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). In resolving a Rule 12(b)(6) motion, however, courts may consider public records, including judicial proceedings, without converting the motion to one for summary judgment. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). Where there is no reasonable dispute over the authenticity of a court's opinion, other courts may properly take judicial notice of the existence of the opinion, but not the facts it contains. *Id.*

**B. Res Judicata**

BOA argues that the doctrine of res judicata bars Plaintiff's claims. "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979). Federal courts give the same preclusive effect to a state court judgment as the courts of the state rendering the judgment. *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381, 105 S. Ct. 1327, 1332 (1985). Michigan courts rendered the judgments at issue here. Michigan courts apply res judicata where the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the later action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

The first of these elements is satisfied, as in several of the parties' previous lawsuits, a court of competent jurisdiction rendered a final judgment on the merits. The Wayne County Circuit Court granted BOA's motions for summary disposition in the 2001, 2005, and 2009 circuit court lawsuits. *See* Def.'s Br. Supp. Mot. Exs. 4, 10, 15. When a motion for summary disposition is granted, the decision is considered "on the merits." *Sherrell v. Bugaski*, 169 Mich. App. 10, 13, 425 N.W.2d 707, 709 (Mich. Ct. App. 1988).

Second, this case involves the same parties or their privies. BOA was a defendant in each of the previous circuit court and federal court lawsuits. Plaintiff was a party to the 2009 circuit court suit. *See* Def.'s Br. Supp. Mot. Ex. 14. While Plaintiff was not a party to several of the other suits, Mr. Sanford, who was a party, stood in privity with her. The Michigan Supreme Court has defined privity as follows:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both a "substantial identity of interests" and a "working functional relationship" in which the interests of the nonparty are presented and protected by the party in the litigation.

*Adair v. State*, 470 Mich. 105, 122, 680 N.W.2d 386, 396 (Mich. 2004) (citations omitted) (quoting *Baraga County v. State Tax Comm'n*, 466 Mich. 264, 269, 645 N.W.2d 13, 16 (Mich. 2002)). The complaint filed in the 2001 circuit court suit alleges that the Sanfords held their checking account and mortgage together. Def.'s Br. Supp. Mot. Ex. 3 ¶¶ 24, 39. Thus, when Mr. Sanford asserted legal rights relating to the couple's checking account and mortgage in the 2001 and 2005 circuit court lawsuits, he asserted the same legal rights that Plaintiff asserts here.

10

The issues raised by Plaintiff in this suit were raised or should have been raised in previous suits. The Michigan Supreme Court has taken a "broad approach" to res judicata, holding that the doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich. at 121, 680 N.W.2d at 396. The previous suits asserted that BOA wrongfully withheld funds in the Sanfords' checking account, causing them to default on a mortgage loan. *See, e.g.,* Def.'s Br. Supp. Mot. Ex. 3 ¶¶ 24-25. The Court therefore concludes that Plaintiff's claims relating to BOA's allegedly wrongful withholding of checking account funds are barred, as those claims have been litigated or could have been raised in prior suits. Plaintiff's claim regarding the validity of the sheriff's deed has been litigated in the 2005 and 2009 circuit court actions.

The identity of the causes of action requires that the claims arose out of the same transaction or series of transactions, or that the claims arose out of the same core of operative facts. *Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002). It is clear that Plaintiff's claims arose from the same transaction as each of the previous lawsuits, BOA's allegedly wrongful withholding of funds in Plaintiff's checking account in August 2000.

Because each of the four elements of res judicata is satisfied, the Court concludes that Plaintiff's claims concerning the withholding of funds and the validity of the sheriff's deed are barred. This includes Plaintiff's claims that BOA's withholding of funds violated the Social Security Act and the Fifth and Fourteenth Amendments, as those claims could have been raised in previous lawsuits concerning this transaction. The Court therefore grants BOA's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**C. Collateral Estoppel**

BOA argues that the doctrine of collateral estoppel bars Plaintiff's claims. Collateral estoppel precludes litigation of a specific issue where four requirements are met:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 650 (6th Cir. 2007) (quoting *NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)).

The requirements for applying collateral estoppel have been met in this case. First, the issues raised in this action have been raised and actually litigated. The Sanfords have claimed in several lawsuits that BOA wrongfully withheld funds in their checking account in August 2000, causing them to default on a mortgage loan. Plaintiff's claim here is identical. In their prior suits, the Sanfords also asserted that the sheriff's deed is void, and Plaintiff raises the issue of the deed's validity again here. These issues have actually been litigated, as the circuit court granted summary disposition. Second, the determination of these issues was necessary to the outcome of the previous proceedings, as they were the only issues litigated. Third, the Court has already determined that the prior proceedings resulted in judgments on the merits. Finally, Plaintiff has had a full and fair opportunity to litigate the issues as a party to the 2009 circuit court action. Although Plaintiff was not a party to the earlier circuit court actions, collateral estoppel extends to privies of the party to a prior suit. *Hamilton's Bogarts*, 501 F.3d at 651. The Court has determined that Mr.

Sanford stood in privity with Plaintiff, effectively representing Plaintiff's interests and raising the same legal rights. Plaintiff's claims must be dismissed, as they are barred by collateral estoppel.

**D. Plaintiff's Social Security Act Claim**

Plaintiff's claim under the Social Security Act, 42 U.S.C. § 407(a), is barred by the doctrines of res judicata and collateral estoppel for the reasons stated above, but the Court notes that this claim suffers an additional deficiency. Section 407(a) protects benefits from "execution, levy, attachment, garnishment, or other legal process." The Supreme Court has held that application of the statute is only proper where there is "utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another." *Wash. State Dep't of Social & Health Srvcs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 1025 (2003). In *Keffeler*, the State of Washington obtained Social Security benefits for foster children, crediting special accounts created on each child's behalf. *Id.* at 378-79, 123 S. Ct. at 1022. The state debited those accounts when it paid foster care costs. *Id.* The Supreme Court held that this action did not constitute a judicial or quasi-judicial means of obtaining funds, and therefore, did not violate the Social Security Act. *Id.* at 385, 123 S. Ct. at 1025.

Plaintiff alleges that BOA used SSI funds to offset an overdraft, but this setoff does not constitute the use of a judicial or quasi-judicial mechanism. BOA's alleged setoff does not appear to involve any legal process. There is no indication that the imposition of an overdraft fee is an adjudicative process, and absent such a showing, the Court cannot

13

conclude that BOA's alleged setoff implicates 42 U.S.C. § 407(a). Plaintiff also argues that her claim should prevail under *Marengo v. First Massachusetts Bank, N.A.*, 152 F. Supp. 2d 92 (D. Mass. 2001), but *Keffeler* was decided after *Marengo*. *Keffeler* is binding precedent, and mandates dismissal of Plaintiff's Social Security Act claim.

### E. Plaintiff's Constitutional Claims

Plaintiff alleges that BOA's actions violated the Fifth and Fourteenth Amendments to the United States Constitution. Presumably, Plaintiff asserts these claims under 42 U.S.C. § 1983, as Mr. Sanford did in his 2009 federal court lawsuit. Plaintiff has failed to provide any factual support for these claims; they are the sort of conclusory assertions that are plainly insufficient to state a claim for relief under *Iqbal*. Even if the Court were to presume that Plaintiff's Fifth and Fourteenth Amendment claims are based on BOA's withholding of checking account funds, Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel for the reasons stated above.

Plaintiff's Fifth and Fourteenth Amendment claims also fail because she has not established that BOA's actions can be fairly attributed to the state. "[M]ost rights secured by the Constitution are protected only against infringement by governments." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S. Ct. 1729, 1733 (1978). "However, a private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). An action is "fairly attributed" to the state where it is (1) taken under color of state law; and (2) taken by a state actor. *Id.* In determining whether these conditions are met, the Sixth Circuit applies three tests: (1) the "public function"

test; (2) the "state compulsion" test; and (3) the "symbiotic relationship" or "nexus" test. *Id.*

The public function test requires that the private party exercises powers traditionally reserved exclusively to the state. *Id.* There is no indication that BOA exercises any such power. The state compulsion test requires that the state exercise such coercive power that the choice of the private actor is deemed to be that of the state. *Id.* at 829. Plaintiff has not alleged facts suggesting that BOA's actions were motivated by state coercion. Under the nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action, so that the action may be fairly treated as that of the state itself. *Id.* at 830. Again, there is no indication that BOA's alleged withholding of checking account funds can be fairly thought of as the action of the state. Because BOA's alleged actions are not fairly attributed to the state, the Court cannot conclude that constitutional standards apply to its actions. Accordingly, Plaintiff's Fifth and Fourteenth Amendment claims must be dismissed.

**F. Litigation Injunction**

BOA seeks an injunction preventing the Sanfords from filing additional lawsuits relating to the same transaction. BOA argues that it has spent thousands of dollars over the past decade defending the Sanfords' meritless suits, all of which have been dismissed by the state and federal courts.

Under 28 U.S.C. § 1651, this Court has the power to permanently enjoin the filing of repetitive and harassing lawsuits. *Heritage Hills Fellowship v. Plouff*, 555 F. Supp. 1290, 1298 (E.D. Mich. 1983). Courts in the Eastern District of Michigan consider several

factors in determining whether to restrict a litigant's future access to the courts:

> (1) The litigant's history of litigation and in particular whether it entails vexatious, harassing or duplicative lawsuits;
>
> (2) The litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?
>
> (3) Whether the litigant is represented by counsel;
>
> (4) Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) Whether other sanctions would be adequate to protect the courts and the other parties.

*Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 940 n.18 (6th Cir. 2002) (quoting *Ortman v. Thomas*, 906 F. Supp. 416, 421-22 (E.D. Mich. 1995)). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

The Court has carefully considered the factors set forth above, and concludes that an injunction should issue. Not including the two cases at bar, the Sanfords have filed six bankruptcy petitions, two lawsuits in federal court, and three lawsuits in state court as part of an ongoing effort to delay and overturn the original foreclosure sale. Undeterred by the dismissal of their previous cases, the Sanfords have repeatedly filed new actions asserting essentially the same claims. Each new lawsuit in a seemingly unending parade of litigation further compounds the costs incurred by BOA and the courts. Given the Sanfords' well-established pattern of refiling after dismissal, the Court is convinced that

abuse of the judicial process will almost certainly continue if an injunction is not issued.[4]

The Court is mindful of the general principle that sanctions should not be more severe than is reasonably necessary.  "[T]he general pattern of litigation in a particular case may be vexatious enough to warrant an injunction in anticipation of future attempts to relitigate old claims."  *Feathers v. Chevron, USA*, 141 F.3d 264, 269 (6th Cir. 1998) (quoting *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983)).  The Sanfords' repeated attempts to relitigate their claims justify such an injunction.  The Court therefore prohibits the Sanfords from filing any new lawsuits regarding BOA's withholding of checking account funds or its foreclosure on the mortgage, unless they first obtain leave of the court.  The Sanfords are similarly prohibited from filing new lawsuits concerning the validity of the sheriff's deed to the property.  Should the Sanfords wish to raise these claims in a new lawsuit, they must obtain leave of the court to do so.

### IV. Plaintiff's Motion for Judgment on the Pleadings

The Court notes that Plaintiff has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons stated above, however, the Court has determined that Plaintiff's claims must be dismissed.  Therefore, the Court denies Plaintiff's motion as moot.

### V. Conclusion

---

[4] This pattern of behavior is exemplified by Plaintiff's filings in the two cases at bar.  These cases raise nearly identical allegations, yet were filed in separate courts on the same day that the Sanfords' 2009 circuit court action was dismissed.  It would be unreasonable to conclude that the aim of such conduct is anything other than harassment.

17

Accordingly,

**IT IS ORDERED** that BOA's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**.

**IT IS FURTHER ORDERED** that BOA's Motion for a Litigation Injunction Against the Sanfords is **GRANTED**. Plaintiff Cynthia Sanford and Third-Party Defendant Bernard Sanford are prohibited from filing any additional lawsuits relating to BOA's alleged withholding of checking account funds, its foreclosure of the mortgage, or the validity of the sheriff's deed to the property, without first obtaining leave of the court.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Judgment on the Pleadings is **DENIED AS MOOT**.

                                    s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE

Copies to:

Cynthia Sanford
20222 Greenlawn
Detroit, MI 48221

Bernard Sanford
20222 Greenlawn
Detroit, MI 48221

Brandon M. Blazo, Esq.
Marilyn A. Peters, Esq.